IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**KATRINA NIXON**                                                                **PLAINTIFF**

**V.**                              **CASE NO. 2:20-CV-2072**

**ETHICON, INC. and**
**JOHNSON & JOHNSON**                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before this Court are a Motion for Partial Summary Judgment (Doc. 16) and a Motion for Leave to Supplement Motion for Summary Judgment (Doc. 50) filed by Defendants Ethicon, Inc., and Johnson & Johnson (collectively, "Ethicon"). Plaintiff Katrina Nixon filed Memoranda in Opposition to both Motions (Docs. 19, 58), and Ethicon filed a Reply (Doc. 61) in support of its Motion for Leave to Supplement.

This case was transferred from the District Court for the Southern District of West Virginia, where the Honorable Joseph R. Goodwin was presiding over seven separate multi-district litigations ("MDL") concerning products sold by the Defendants. This case was related to one of the seven MDLs. *See* Transfer Order, Doc. 25.

On July 22, 2020, the Court held a telephonic status hearing and permitted the parties to present oral argument on the pending Motions. The Court indicated to the parties from the bench how it intended to rule on the Motions, but specified that a more fulsome order would be entered to explain the Court's reasoning. Accordingly, the Court finds that the Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** and the Motion for Leave to Supplement is **DENIED** for the reasons stated below.

1

## I. BACKGROUND

Unless otherwise stated, the following facts are taken from Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 19).

On April 15, 2011, Ms. Nixon, a 49-year-old woman, underwent surgery in Fort Smith, Arkansas, to implant Defendants' TVT transvaginal mesh device. The mesh was intended to address Ms. Nixon's complaint of stress urinary incontinence. The implanting physician, Dr. Jeanmarie Householder, testified that the TVT was implanted according to appropriate standards of care. After the surgery, Ms. Nixon started to experience complications she believes were caused by the device, including pelvic and groin pain, dyspareunia, urinary problems, and emotional and psychological distress. In 2015, she sought a second opinion from Dr. Sunshine Murray, who diagnosed Ms. Nixon with mesh erosion into the bladder, mesh extrusion into the vagina, and a bladder stone associated with the mesh sling. In November of 2015, Dr. Murray partially removed the mesh device and performed bladder repairs.

Ms. Nixon filed suit in the MDL court on March 15, 2016, alleging seventeen causes of action. (Doc. 1).[1] On October 16, 2018, Ethicon moved for partial summary judgment on fourteen Counts: I–IV and VI–XV. *See* Doc. 16. In response, Ms. Nixon conceded that Counts II–IV, VI–XIII, and XV lacked merit. (Doc. 18). Subsequent to the status conference on July 22, Ms. Nixon's counsel agreed in writing that Count XIV also lacked merit and was subject to dismissal, as Arkansas law does not recognize a separate cause of action for gross negligence. Ms. Nixon clarified, however, that she did not intend to

---

[1] The short-form Complaint listed eighteen possible causes of action in a "check-the-box" format. Ms. Nixon elected to pursue all causes of action listed on the form except Count XVI for loss of consortium.

waive her claim for punitive damages. Accordingly, Counts II–IV and VI–XV will be dismissed with prejudice on summary judgment. This means that the only cause of action that is disputed in Ethicon's Motion for Partial Summary Judgment is Count I.

The second motion before the Court is Ethicon's Motion for Leave to Supplement (Doc. 5), which was filed soon after this case was transferred here from the MDL court. Ethicon acknowledges that its Motion for Partial Summary Judgment did not mention Count V, which is a strict liability claim arising from an alleged design defect. Ethicon now requests leave to file a second motion for summary judgment that specifically addresses Count V. In requesting this relief, Ethicon does not suggest that the MDL court's scheduling orders and summary judgment briefing deadlines were unduly harsh or prejudicial. Instead, the sole justification offered for filing for a new summary judgment motion—nearly two years out of time—is "the interest of justice and judicial economy." (Doc. 51, p. 1).

Before turning its attention to the two Motions, the Court must address one final housekeeping matter. During the status conference on July 22, the Court asked Ms. Nixon's counsel whether Count XVII, a cause of action for punitive damages, was an independent claim under Arkansas law. In a letter sent to the Court after the hearing, counsel confirmed that Count XVII was not a separate cause of action and should be dismissed, though Ms. Nixon reserved the right to pursue punitive damages as a remedy. In the same writing, counsel acknowledged that Count XVIII, a claim entitled "Discovery Rule and Tolling," was not an independent cause of action and should be dismissed.[2]

---

[2] In agreeing to dismiss Count XVIII, Ms. Nixon reserved the right to rely on the discovery rule, tolling, and any other legal or equitable defenses available to her if Ethicon asserted the statute of limitations as a defense.

3

## II. LEGAL STANDARDS

### A. Summary Judgment

The standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, in order for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).

### B. Filing a Motion Out of Time

Federal Rule of Civil Procedure 6(b)(1)(B) gives the Court the option to extend the time for submitting a motion "if the party failed to act because of excusable neglect." Excusable neglect is an "elastic concept," which is "not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391–92 (1993). This is fundamentally a question of equity and relies on four factors: (1) the prejudice to the nonmovant, (2) the length of the delay and the impact on the judicial proceeding, (3) the reason for the delay and if it was reasonably in their control, and (4) whether the movant acted in good faith. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (citing *Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir. 1999)).

### III. DISCUSSION

### A. Motion for Partial Summary Judgment

Ethicon argues that the negligence claim stated in Count I must be: (1) merged into a single products liability claim, (2) dismissed as duplicative of the strict liability claim in Count V (which was not the subject of the summary judgment motion), or (3) dismissed because common-law negligence was abrogated by the enactment of the Arkansas Products Liability Act ("APLA") (Doc. 17, pp. 7-11). These arguments are rejected.

The APLA states that a "'[p]roduct liability action' includes all actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparations, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Ark. Code Ann. § 16-116-202(5). Ethicon argues that the APLA is similar to, and should be treated the

5

same as, the Kansas Products Liability Act ("KPLA"), which has been interpreted by Kansas courts to require that "all legal theories of recovery are merged into one legal theory called a 'product liability claim.'" (Doc. 17, p. 9 (citing *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1311 (Kan. 1993)). In relevant part, the KPLA states that a "[p]roduct liability claim"

> includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure whether negligent or innocent, or under any other substantive legal theory.

K.S.A. 60-3302(c).

In other words, *under the KPLA*, all legal theories of recovery, *e.g.*, negligence, strict liability, and failure to warn, are to be merged into one legal theory called a "product liability claim." No "similar" provision mandating the merger of claims appears in the APLA, as Ethicon maintains. *See* Doc. 17, p. 9. In fact, the Arkansas Supreme Court has established that "[n]egligence and strict liability are not mutually exclusive claims. More than one theory of liability is permissible in a products liability claim." *Nationwide Rentals Co. v. Carter*, 765 S.W.2d 931, 933 (Ark. 1989) (citing *W.M. Bashlin Co. v. Smith*, 643 S.W.2d 526, 529 (Ark. 1982)).[3] The Court finds that Arkansas law permits Ms. Nixon to simultaneously maintain her negligence claim under Count I and her strict liability claim

---

[3] Moreover, Arkansas Model Civil Jury Instruction 1013, titled "Products Liability—Issues—Claims Involving Two or More Theories of Liability," explains in the "Note on Use" that it "can be used to submit to the jury any combination of five separate causes of action in the field of products liability: strict liability (AMI 1008); negligence (AMI 203); breach of implied warranty of merchantability (AMI 1010); breach of implied warranty of fitness for a particular purpose (AMI 1011); and breach of an express warranty (AMI 1012)."

6

under Count V. For these reasons, Ethicon's Motion for Partial Summary Judgment as to Count I is **DENIED**.

### B. Motion for Leave to Supplement

In filing this Motion for Leave, Ethicon asks for another bite at the summary-judgment apple. The MDL court's original deadline for filing dispositive motions was September 21, 2018. (Doc. 7). That deadline was subsequently extended to October 18, 2018. (Doc. 12). Ethicon never moved for summary judgment on Count V by the deadline. Ethicon does not argue the final deadline was unfair, unduly prejudicial, or violative of due process. Instead, Ethicon reminds the Court that it was dealing with thousands of cases before the MDL and did not have sufficient time to address them all as thoroughly as it would have liked. Ethicon asks for a second opportunity to file for summary judgment and include arguments that it failed to make the first time around.

The Court finds that Ethicon has not made a showing of excusable neglect based on the four factors set forth in *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010). Beginning with the first factor, it is clear that granting Ethicon's request to file a late summary judgment motion would result in prejudice to Ms. Nixon. It appears that Ethicon was capable of filing a dispositive motion addressing fourteen of Ms. Nixon's seventeen claims by the MDL court's deadline. Permitting Ethicon to file a second dispositive motion on the eve of trial would require Ms. Nixon to divert her time and resources from preparing for trial to responding to the motion. As to the second *Chorosevic* factor, the Court finds that these judicial proceedings would be negatively impacted if the Motion for Leave were granted, given Ethicon's nearly two-year delay in filing it. Ethicon waited until May 29, 2020, to file its Motion for Leave. Meanwhile, Ms.

Nixon has been waiting more than four years to try her case. The Court sees no justification for further delaying the trial to accommodate a late summary judgment motion, particularly in view of the MDL Court's Transfer Order, which "urge[d] the receiving court to immediately set these cases for trial." (Doc. 25, p. 1).[4] As to the third factor, Ethicon explains that its reason for delay was that it was busy defending thousands of cases in the MDL. The fact that Ethicon managed to timely move for summary judgment on fourteen out of seventeen Counts cuts against its claim that it was "too busy" to address Count V. Moreover, the timely summary judgment motion was filed in the MDL court in October of 2018, and the case was not transferred to this Court until April of 2020—eighteen months later. Ethicon makes no effort to explain why it failed to ask the MDL court for leave to file a second summary judgment motion. Finally, as to the fourth and final factor, the Court assumes that Ethicon submitted this motion in good faith; however, the Court's consideration of the other three factors weighs against granting the motion, and it is therefore **DENIED**.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 16) is **GRANTED IN PART AND DENIED IN PART** as follows: the Motion is **GRANTED** as to Counts II–IV and VI–XV, which are **DISMISSED WITH PREJUDICE**. The Motion is **DENIED** as to Count I.

**IT IS FURTHER ORDERED** that Counts XVII and XVIII are **DISMISSED**, as they are not independent causes of action under Arkansas law.

---

[4] Of course at trial, Ethicon may move for judgment as a matter of law as to Count V under Rule 50(a), if appropriate.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Supplement Motion for Summary Judgment (Doc. 50) is **DENIED** due to untimeliness.

Counts I and V of the Complaint remain for trial.

**IT IS SO ORDERED** on this 27th day of July, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE